D+F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X

P.K. and T.K. on behalf of S.K.,

        Plaintiffs,

        v.

NEW YORK CITY DEPARTMENT
OF EDUCATION (Region 4),

        Defendant.

------------------------------------------------X

09 CV 1472 (SJ) (SMG)

**ORDER ADOPTING**
**REPORT AND**
**RECOMMENDATION**

APPEARANCES

MAYERSON & ASSOCIATES
330 West 38th Street, Suite 600
New York, NY 10018
By:    Gary S. Mayerson
        Tracey Spencer Walsh
Attorneys for Plaintiffs

The New York City Law Department
100 Church St, Room 2-306
New York, NY 10007
By:    Lesley Berson Mbaye
Attorneys for Defendant

JOHNSON, Senior District Judge:

      P.K. and T.K ("Plaintiffs") on behalf of their daughter, S.K., filed suit against the New York City Department of Education, Region 4 ("Defendant" or

1

P-049

"the Department") pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"), to challenge the denial of certain educational benefits. Before the Court are the parties' cross-motions for summary judgment and Defendant's motion to strike Plaintiff's supplemental affidavit, which were referred to Chief Magistrate Judge Steven M. Gold for a Report and Recommendation ("Report").

On March 17, 2011, Magistrate Judge Gold issued a Report recommending that this Court: (1) grant Plaintiffs' motion for summary judgment; (2) deny Defendant's motion for summary judgment; (3) grant Defendant's motion to strike; and (4) award full reimbursement for the cost of tuition at Manhattan Children's Center ("MCC") for the 2008–2009 school year. (Report at 1–2 & n.3, 32–33 (Docket Entry ("DE") No. 41).) The parties timely filed objections. (See DE Nos. 46, 47, 48.) After a de novo review of the record, the Court adopts the expansive and well-reasoned Report in its entirety.[1]

## BACKGROUND

The facts of the case are described in detail in the Report. (See Report at 2–5.) To summarize, in 2005, S.K., then two years old, was evaluated by the Department's Early Intervention Program and began to receive speech therapy. In May 2006, S.K. was diagnosed with severe autism. She began receiving speech

---

[1] The Clerk of Court is directed to append the Report to this Order.

2

therapy and applied behavioral analysis ("ABA") services as determined by the Department's Committee on Preschool Education ("CPSE") in July 2006.

The CPSE created a final Individualized Education Program ("the preschool IEP") for S.K. in January 2008, in which it recommended a preschool class with a ratio of eight students to one teacher, home ABA therapy, and weekly one-on-one speech and occupational therapy sessions. The speech and language therapy sessions were necessary because of S.K.'s "significant delays" in expressive language and speech comprehension.

In March 2008, a Committee on Special Education ("CSE") convened a meeting, which S.K.'s mother attended; shortly thereafter, a kindergarten IEP ("the kindergarten IEP") was created for S.K. Like the preschool IEP, the kindergarten IEP recommended one-on-one occupational therapy sessions. However, unlike the preschool IEP, the kindergarten IEP recommended a six-to-one student-to-teacher ratio for S.K.'s class in a specialized year-round public school and three-to-one speech therapy sessions, and eliminated home ABA therapy. The IEP noted that while S.K. had made substantial progress with an ABA therapist, she continued to have significant speech delays.

In May 2008, Plaintiffs filed a request for a due process hearing, raising procedural and substantive challenges to the kindergarten IEP. In June 2008, the Department's Final Notice of Recommendation offered placement at a full-year special education class at P.S. 151 for the 2008–2009 school year. Plaintiffs sent a

3

letter to the Department rejecting the placement based on their previous visits to the school, finding that the placement did not appropriately meet S.K.'s needs. After investigating alternatives, Plaintiffs decided that MCC, a special education school for children with autism, was appropriate for S.K. During the 2008–2009 school year, S.K. attended MCC and received, inter alia, ABA therapy.

Pursuant to 20 U.S.C. § 1415(f), an Impartial Hearing Officer ("IHO") presided over due process hearings in July and September 2008. The IHO found that the Department denied S.K. a free and appropriate public education ("FAPE"), see 20 U.S.C. § 1401(9). Specifically, the IHO determined that: (1) the kindergarten IEP was deficient because the Department failed to develop a functional behavioral assessment ("FBA") and behavioral intervention plan ("BIP") to address S.K.'s interfering behaviors; (2) the kindergarten IEP did not comply with 8 N.Y.C.R.R. § 200.13 because it failed to provide sufficient speech therapy and did not offer any parent counseling and training; and (3) the Department failed to offer any methods for accurately measuring S.K.'s progress in meeting her goals. The IHO also found that MCC could provide an appropriate educational program to meet S.K.'s needs, and that equitable consideration supported Plaintiffs. As a result, the IHO ordered the Department to pay tuition at MCC.[2]

Defendant appealed the IHO decision and the matter was reviewed by a Department State Review Officer ("SRO"). See N.Y. EDUC. L. § 4404. The SRO

---

[2] Plaintiffs paid a $1000 deposit to secure a seat at MCC for S.K., but provided no tuition to the school during the 2008–2009 school year.

4

annulled the IHO decision and determined that the Department offered S.K. a FAPE for the 2008–2009 school year. Specifically, the SRO found that: (1) the kindergarten IEP was not deficient because there is no need for an FBA or BIP, as S.K.'s teachers could manage her interfering behaviors; (2) the proposed public school placement would have met the speech therapy and parent training requirements of 8 N.Y.C.R.R. § 200.13; and (3) any deficiency in the kindergarten IEP with respect to measuring progress towards goals did not deny S.K. a FAPE.[3]

Plaintiffs then filed the instant action seeking reversal of the IHO's decision and tuition reimbursement, which permits the Court to consider both the administrative record and additional evidence "at the request of a party," 20 U.S.C. § 1415(i)(2)(C)(ii). The parties cross-moved for summary judgment.[4] (See DE Nos. 7, 20.) Defendant also moved to strike a supplemental affidavit that Plaintiffs filed, in which Plaintiffs contend that Defendant's violation of the 1998 Jose P. consent decree is an additional basis for an award in their favor. (See DE No. 30.)

The parties presented limited oral argument to the Court in July 2010. After the Court's referral, Magistrate Judge Gold heard extensive oral argument and ordered supplemental briefing. (See Transcript dated Jan. 21, 2011 (DE No. 34).)

---

[3] Because the SRO determined that the Department offered S.K. a FAPE for the 2008–2009 school year, the SRO did not reach the issue of whether S.K.'s placement at MCC was appropriate or whether the equities balance in favor of the parents.

[4] "IDEA actions in federal court are frequently resolved on summary judgment motions. . . . The standard by which a district court reviews the final determination of the SRO has been characterized as modified de novo review." R.B. & H.Z. ex rel. C.Z. v. New York City Dep't of Educ., 713 F. Supp. 2d 235, 244 (S.D.N.Y. 2010)

P-049

## STANDARDS OF REVIEW

A district court judge may designate a magistrate judge to hear and determine certain motions pending before the Court and to submit to the Court proposed findings of fact and a recommendation as to the disposition of the motion. See 28 U.S.C. § 636(b)(1). Within 14 days of service of the recommendation, any party may file written objections to the magistrate's report. See id.

If either party objects to the magistrate judge's recommendations, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See id.; see also Fed. R. Civ. P. 72(b)(3); United States v. Tortora, 30 F.3d 334, 337 (2d Cir. 1994). A de novo determination entails an independent review of all objections and responses to the magistrate's findings and recommendations. See, e.g., Tortora, 30 F.3d at 337–38; cf. Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1045 (2d Cir. 1992).

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections may waive the right to appeal this Court's Order. See 28 U.S.C. § 636(b)(1); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

6

P-049

As the Report correctly notes, in an IDEA case, the Court determines "whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." (Report at 6 (citing S.W. v. New York City Dep't of Educ., 646 F. Supp. 2d 346, 352 n.1 (S.D.N.Y. 2009).) The Court engages in "an independent review of the administrative record," but "such review is 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'" Gagliardo v. Arlington Central Sch. Dist., 489 F.3d 105, 112–13 (2d Cir. 2007) (citing Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)).

Under IDEA's statutory framework, parents who are dissatisfied with a school district's placement may unilaterally place their child in a private school and then seek retroactive tuition reimbursement from the local school district. M.P.G. ex rel. J.P. v. New York City Dep't of Educ., No. 08 Civ. 8051 (TPG), 2010 WL 3398256, at *2 (S.D.N.Y. Aug. 27, 2010) (citing 20 U.S.C. § 1412(a)(10)(C)). Under the "Burlington-Carter" test, reimbursement is appropriate when (1) the school district has provided an "inadequate or inappropriate" placement; (2) the parents' selected program is appropriate, such that the private program meets the student's special education needs; and (3) the equities favor the parents. See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369–70, (1985); Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 12–13 (1993).

7

P-049

## **DISCUSSION**

*The Report's Findings and Recommendations*

After exhaustively reviewing the administrative record, Magistrate Judge Gold affirms in part and rejects in part the SRO's decision. As to Prong I of the Burlington-Carter test for reimbursement, Magistrate Judge Gold defers to the SRO's determinations that the Department was not required to conduct an FBA or develop a BIP for S.K., and that "any alleged deficiency with respect to S.K.'s goals did not rise to the level of a denial of a FAPE." (Report at 13–14, 16–17.). Magistrate Judge Gold concludes, however, that the combination of terminating S.K.'s one-on-one speech and ABA therapy <u>and</u> failing to provide training to her parents deprived S.K. of a FAPE. (Report at 20–23). Specifically, he relies on

> the significant progress S.K. was just beginning to make with support services in place, the consistent expert opinions in the record that S.K. required continued individualized speech and ABA therapy to maintain her progress, and the absence of any evidence in the record suggesting that S.K. would receive a non-trivial educational benefit without these support services.

(Report at 25.) In reaching this conclusion, Magistrate Judge Gold considered "whether the IEP 'as a whole' provided sufficient services to enable S.K. to make progress." (Report at 25 (citing T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 419 (2d Cir. 2009) and R.K. v. New York City Dep't of Educ., No. 09-CV-4478, 2011 WL 1131492, at *22 (E.D.N.Y. Jan. 21, 2011).)

8

P-049

For the remaining prongs of the Burlington-Carter test, Magistrate Judge Gold finds that Plaintiffs met their burden. As to Prong II, Magistrate Judge Gold concludes that the placement at MCC was appropriate because it provided the services found lacking in the kindergarten IEP (in other words, speech and ABA therapy for S.K. and individualized training and support to her parents). (Report at 29–30.)

As to Prong III, Magistrate Judge Gold finds that the equities weigh in favor of Plaintiffs being reimbursed for placing S.K. at MCC for the 2008–2009 school year because, although Plaintiffs enrolled S.K. at MCC before rejecting the public placement, they did not act so unreasonably as to warrant reduced reimbursement. (See Report at 31–32 (describing the parents' communications with the Department regarding the proposed placement).)

Magistrate Judge Gold also concludes that the Department should pay tuition directly to MCC despite the fact that S.K.'s parents did not pay MCC any tuition. (Report at 32.) The Report relies on the analysis in Mr. A. ex rel D.A. v. New York City Dep't of Educ., 769 F. Supp. 2d 403, 427–30 (S.D.N.Y. 2011), where the court held that, where the parents had prevailed on the three prongs of the Burlington-Carter test, the IDEA authorizes a court to award retroactive direct payment of private school tuition.[5]

---

[5] Magistrate Judge Gold also recommends that Defendant's motion to strike Plaintiff's supplemental affidavit should be granted. (See Report at 1 n.3.)

P-049

*Parties' Objections*

Both parties submitted objections to the Report's conclusions as to the Burlington-Carter analysis. (See DE Nos. 46 ("Def. Obj.") & 47 ("Pls.' Obj.").)

Defendants object to Magistrate Gold's conclusions regarding all three prongs of the Burlington-Carter test. Specifically, under Prong I, Defendants argue that Magistrate Judge Gold erred in considering the issue of whether S.K. should receive ABA therapy because Plaintiffs failed to exhaust the issue before the IHO or SRO. (Def. Obj. at 11–14.) Defendants also argue that Magistrate Judge Gold ignored evidence in the record that S.K. would have received one-on-one instruction in the recommended public placement. (Def. Obj. at 14–15.) Defendants further object that Magistrate Judge Gold did not defer to the SRO's determination that the Department's recommended placement offered sufficient speech therapy for S.K. (Def. Obj. at 15–18.) Defendants also claim that Magistrate Judge Gold applied an erroneous standard regarding parent training and therefore failed to defer to the SRO's decision. (Def. Obj. at 18–20.)

As to Prong II, Defendants assert that Magistrate Judge Gold improperly relied on generic testimony regarding programs at MCC and that such testimony is insufficient to show that the placement is appropriate. (Def. Obj. at 20–22.) Finally, as to Prong III, Defendant argues that the parents' lack of cooperation is sufficient to defeat a claim for tuition reimbursement, and that Magistrate Judge Gold erred in ruling otherwise. (Def. Obj. at 22–24.)

P-049

Plaintiffs admittedly "do not take any issue with Judge Gold's ultimate conclusion," (Pls.' Obj. at 3.), but still raise three limited objections. First, Plaintiffs argue that Magistrate Judge Gold afforded "too much due deference" to the SRO's determinations and should have found that the SRO failed to conduct a "thorough and careful review" under Prong I of the <u>Burlington</u>-<u>Carter</u> analysis and failed to ground his decision in educational policy. (Pls.' Obj. at 1–2.) Next, Plaintiffs assert, Magistrate Judge Gold should have held that the SRO's analysis regarding the defective IEP was improper because it relied upon retrospective evidence and testimony rather than on the "four corners" of the IEP. (Pls.' Obj. at 2). Finally, Plaintiffs claim that Magistrate Judge Gold should not have deferred to the SRO's conclusion that the Department was not required to develop an FBA or BIP for S.K., because no deference should be accorded on questions of statutory construction or a mixed question of law and fact. (<u>See</u> Pls.' Obj. 2–3.)[6]

The Court has reviewed <u>de novo</u> the portions of the Report to which the parties object, in addition to the applicable law, pleadings, and administrative record. None of the objections raise new legal or factual arguments not previously considered by Magistrate Judge Gold. Upon review of the record, the Court agrees with Magistrate Judge Gold's careful, well-reasoned analysis and findings, and adopts the Report in its entirety.

---

[6] Defendant also replied to Plaintiffs' objections, arguing that: (1) Plaintiffs fail to demonstrate that the SRO's decision was not thorough or not based on educational policy; (2) Magistrate Judge Gold properly relied on testimony at the hearings rather than just the "four corners" of the IEP; and (3) Magistrate Judge Gold correctly deferred to the SRO's decision that an FBA or BIP was not required. (<u>See</u> Def. Reply (DE No. 48).)

11

P-049

## CONCLUSION

Based on the foregoing, this Court affirms and adopts the Report in its entirety. Accordingly: (1) the parties' objections to the Report are overruled; (2) Defendant's motion for summary judgment is DENIED; (3) Defendant's motion to strike the affidavit is GRANTED; and (4) Plaintiffs' motion for summary judgment is GRANTED consistent with the findings in the Report. The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED: August 11, 2011
         Brooklyn, New York     Hon. Sterling Johnson, Jr., Senior U.S.D.J.

P-049